David J. McGlothlin, Esq. (SBN 026059)
david@southwestlitigation.com
**Hyde & Swigart**
2633 E. Indian School Road, Ste. 460
Phoenix, AZ 85016
Telephone: (602) 265-3332
Facsimile: (602) 230-4482

Ryan L. McBride, Esq. (SBN 032001)
ryan@kazlg.com
**Kazerouni Law Group, APC**
2633 E. Indian School Road, Ste. 460
Phoenix, AZ 85016
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Bruce A. Ritter,** | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ., BREACH OF CONTRACT, AND THE ARIZONA CONSUMER FRAUD ACT** |
| v. | |
| **Pinnacle Nissan, LLC d/b/a Pinnacle Nissan and Nissan Motor Acceptance Corporation,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and


accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. BRUCE A. RITTER ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of PINNACLE NISSAN, LLC D/B/A PINNACLE NISSAN ("Pinnacle") and NISSAN MOTOR ACCEPTANCE CORPORATION ("NMAC"), (or jointly as "Defendants") with regard to erroneous reports of derogatory and negative credit information made by Defendants to national reporting agencies, and for failure of Defendants to properly investigate, and this conduct caused Plaintiff damages.

3. Plaintiff also makes claims under Breach of Contract and the Arizona Consumer Fraud Act A.R.S. §44-1522.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in Arizona.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; Jurisdiction arises for Plaintiff's supplemental state claims under 28 U.S.C. § 1367.

10. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA"), Breach of Contract, and violations of the Arizona Consumer Fraud Act.

11. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Maricopa County, the State of Arizona, and Defendants are subject to personal jurisdiction in the County of Maricopa, State of Arizona as they conduct business there, and the conduct giving rise to this action occurred in Arizona. 28 U.S.C. § 1391(b)(2).

## PARTIES

12. Plaintiff is a natural person residing in the County of Maricopa, State of Arizona. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Defendant Pinnacle is a limited liability company registered with the Arizona Secretary of State and doing business in the State of Arizona.

14. Defendant NMAC is a corporation registered with the Arizona Secretary of State and doing business in the State of Arizona.

15. Defendant NMAC is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

### GENERAL ALLEGATIONS

16. At all times relevant, Plaintiff was an individual residing within the State of Arizona.
17. At all times relevant, Defendants conducted business in the State of Arizona.
18. On or about June 27, 2015, Plaintiff signed a purchase agreement for a vehicle VIN# 5N1AZ2MG5FN211389.
19. In this purchase agreement dated June 27, 2015, Plaintiff agreed to make monthly payments of $696.98, which included payment for a pre-paid maintenance agreement ("PMA").
20. The total amount financed in this purchase agreement dated June 27, 2015 was $40,861.70.
21. At the time of signing the purchase agreement, Pinnacle told Plaintiff if Plaintiff decided he did not want the PMA, Pinnacle would allow Plaintiff to sign a new contract, which would include smaller monthly payments.
22. Later that day after, Plaintiff decided that he did not want the PMA.
23. Plaintiff called Pinnacle the next business day on or around June 29, 2015 and told Pinnacle he did not want the PMA.
24. Pinnacle told him he needed to come in and sign a new purchase agreement that did not include the PMA.
25. Plaintiff came into the Pinnacle office and signed a new purchase agreement on or about July 2, 2016.
26. The new purchase agreement omitted the PMA and now included monthly payments due of $610.74.

27. Pinnacle was clear that the original contract would be void and the new contract requiring a payment of $610.74 was the valid contract between the parties.
28. The total amount financed on the new purchase agreement was now $35,805.55.
29. On or about the beginning of August Plaintiff received his first bill from Nissan Motor Acceptance Corporation ("NMAC"), the company that financed his vehicle that Plaintiff bought from Pinnacle.
30. In this bill from NMAC, NMAC stated that Plaintiff owed $696.98 per month for the vehicle payment.
31. This $696.98 is the same amount as was included in Plaintiff's first voided contract with Pinnacle.
32. Plaintiff was extremely frustrated that Pinnacle and NMAC had not made the corrections to the monthly payment amounts by lowering them to the correct amount of $610.74.
33. Plaintiff sent an email on or about August 16, 2015 to Matt Cerreta and Anna Algiene, employees of Pinnacle, describing the situation and asking that Pinnacle remedy the situation so that Plaintiff's payments due to NMAC are $610.74 as the second valid contract states.
34. When Plaintiff did not hear back from Pinnacle, Plaintiff called NMAC to attempt to figure out a solution.
35. NMAC told Plaintiff the situation could be corrected by Pinnacle sending the new contract to NMAC.
36. On or about October 23, 2015 Plaintiff sent another email to Matt Cerreta and Anna Algiene asking Pinnacle to send a copy of the new contract to NMAC. In this email, Plaintiff provided a copy of the new contract to Pinnacle.
37. Pinnacle *never* sent the new contract to NMAC.

38. While Plaintiff was attempting to resolve the situation, Plaintiff made payments of $610.74 to NMAC, just like was required in his new valid contract.

39. However, after a couple months of payments, NMAC informed Plaintiff that his account was overdue.

40. On 3-4 more occasions, Plaintiff contacted NMAC, and NMAC refused to fix the situation and referred Plaintiff to Pinnacle for resolution.

41. Plaintiff continued to make the contractually agreed upon payments of $610.74 to NMAC.

42. In or around February 2016, NMAC started reporting late payments on Plaintiff's account on Plaintiff's credit reports.

43. Specifically, on Plaintiff's Experian, Equifax, and Trans Union credit reports dated in June 2016, NMAC reported the following inaccurate, derogatory information:

- NMAC Account No. 10249659648****: Derogatory reporting for the following dates: January 2016-May 2016 (30 days late).

44. NMAC should not have reported derogatory information on Plaintiff's account because Plaintiff was making the contractually agreed upon payments on time.

45. On or about June 16, 2016, Plaintiff disputed NMAC's reported information regarding the NMAC account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Experian, Equifax, and Trans Union, in writing, of the incorrect and inaccurate credit information furnished by NMAC.

46. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, Equifax, and Trans Union (the "Dispute Letters"), requesting the above inaccurate and incorrect derogatory information be removed as follows:

- Account #10249659648****: My contract with Pinnacle Nissan clearly states that my monthly payments are $610.00. However, Nissan Motor Acceptance Corporation (NMAC) is reporting in the account history that the account is 30 days past due as of Jan 2016 to May 2016. These should not be delinquencies because I have made all the agreed upon payments of $610.00 per month. In addition, the scheduled payment amount is $696.00 from August 2015 through May 2016, which is incorrect. The scheduled payment amount should be $610.00. Finally, the original credit amount is listed as $40,861 when in actuality, it should be $35,805.55. This is inaccurate.

47. The Experian, Equifax, and Trans Union Dispute Letters further requested that Experian, Equifax, and Trans Union:

- Immediately delete this account and the disputed derogatory information from my credit report.
- If [Experian]/[Equifax]/[Trans Union] do[es] not immediately delete this from [Plaintiff's] credit report, please include a 100-word statement in my credit report of all of the disputed information contained in this letter regarding this account.

48. Upon information and belief, Experian, Equifax, and Trans Union timely notified NMAC of Plaintiff's dispute, but NMAC continued reporting derogatory information.

49. NMAC was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

50. On or about July 15, 2016, Plaintiff received notification from Experian that NMAC and Experian received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6).

51. On or about July 16, 2016, Plaintiff received notification from Trans Union that NMAC and Trans Union received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6).

52. On or about July 19, 2016, Plaintiff received notification from Equifax that NMAC and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6).

53. Surprisingly, NMAC through Experian, Equifax, and Trans Union verified the disputed account information and left the derogatory, inaccurate information on all of Plaintiff's credit reports.

54. Specifically, NMAC reported the following inaccurate, derogatory information:

- Account No. 10249659648****: Derogatory reporting for the following dates: January 2016-May 2016 (30 days late).

55. This information is inaccurate because Plaintiff was making the contractually agreed upon payments to NMAC.

56. NMAC had access to the new valid contract because Plaintiff provided NMAC and Pinnacle with a copy of the contract.

57. Plaintiff also told NMAC on multiple occasions that there was a new valid contract with payments listed as $610.74.

58. NMAC, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

59. NMAC failed to review all relevant information provided by Plaintiff in the disputes to Experian, Equifax, and Trans Union, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

60. Due to NMAC's failure to investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E),

thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

61. Plaintiff's continued efforts to correct NMAC's erroneous and negative reporting of the NMAC account by communicating Plaintiff's dispute with NMAC through Experian, Equifax, and Trans Union were fruitless.

62. NMAC's continued inaccurate and negative reporting of the NMAC account in light of its knowledge of the actual error was willful.

63. NMAC's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

64. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, NMAC failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

65. Further Defendant's conduct caused Plaintiff emotional distress and mental anguish type damages which included symptoms including but not limited to: stress, anxiety, worry, feelings of hopelessness, helplessness, and frustration.

66. In addition, Plaintiff suffers from a heart condition called aortic dissection. If Plaintiff does not keep his stress level down, the increased blood flow could cause the false wall in his heart to rupture. Defendants' actions and inactions have significantly increased Plaintiff's stress level, and have increased his chances of a major heart implication.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 *ET SEQ.* (FCRA)
## (AGAINST NMAC)

67. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

68. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

69. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

70. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to statutory damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
## (AGAINST PINNACLE AND NMAC)

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. Plaintiff, Pinnacle, and NMAC reached an agreement through a written contract.

73. The original contract was superseded by a second, new contract, which became the valid agreement.

74. Under this contract, Plaintiff was to pay $610.74 per month to NMAC and NMAC was to accept these payments.

75. NMAC and Pinnacle breached this contract by not accepting the $610.74 as full payments under the agreement.

76. Plaintiff then suffered damages as a result of NMAC's failure to accept $610.74 as full payment. NMAC reported derogatory information on Plaintiff's credit reports because of NMAC and Pinnacle's actions and inactions.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
### (AGAINST PINNACLE AND NMAC)

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. A Defendant has violated the Consumer Fraud Act when there is an intentional deceptive act, practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of merchandise (A.R.S. § 44-1522).

79. "Merchandise means any objects, wares, goods, commodities, intangibles, real estate or services…" (A.R.S. § 44-1521).

80. NMAC has committed a deceptive act by insisting that Plaintiff make payments that NMAC knew or should have known are not due.

81. NMAC turned a blind eye to the fact that Plaintiff has a second valid contract with Pinnacle and NMAC.

82. Pinnacle has omitted sending NMAC the second valid contract signed with Plaintiff.

83. The price of Plaintiff's vehicle is a material, and arguably the most important fact of the agreement.

84. The sale of a vehicle is the sale of merchandise under the Arizona Consumer Fraud Act.

85. As a result of NMAC and Pinnacle's actions, Plaintiff has suffered damages including emotional, mental, and economical damages.

86. The foregoing acts and omissions constitute multiple violations of the Arizona Consumer Fraud Act.

87. As a result of each and every violation of the Arizona Consumer Fraud Act, Plaintiff is statutorily entitled to actual damages, punitive damages and attorneys fees in sums to be determined at trial.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)
### (AGAINST NMAC)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and
- any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
### (AGAINST PINNACLE AND NMAC)

- an award of compensatory damages;
- an award of incidental damages;

- an award of costs of litigation and reasonable attorney's fees, against Defendants; and
- any other relief the Court may deem just and proper.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
### (AGAINST PINNACLE AND NMAC)

- an award of actual damages pursuant to A.R.S §44-1522;
- an award of punitive damages as the Court may allow pursuant to A.R.S §44-1522
- award of costs of litigation and reasonable attorney's fees, pursuant to A.R.S §44-1522 against Defendants; and
- any other relief the Court may deem just and proper.

### TRIAL BY JURY

88. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 1, 2016                                      Respectfully submitted,

**Kazerouni Law Group**

BY: /s/ RYAN L. MCBRIDE_____
     RYAN L. MCBRIDE, ESQ.
     ATTORNEY FOR PLAINTIFF